Anthony J. Staltari (ID No. 233022017)
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7221
anthonystaltari@quinnemanuel.com

Viola Trebicka (admitted *pro hac vice*)
John Wall Baumann (admitted *pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
violatrebicka@quinnemanuel.com
jackbaumann@quinnemanuel.com

Ella Hallwass (admitted *pro hac vice*)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
ellahallwass@quinnemanuel.com

Xi ("Tracy") Gao (admitted *pro hac vice*)
555 13th Street NW, Suite 600
Washington D.C., 20004
Telephone: (202) 538-8000
tracygao@quinnemanuel.com

*Counsel for Defendant* Yardi Systems, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ATLAS DATA PRIVACY CORPORATION, as assignee of individuals who are Covered Persons, JANE DOE-1, a law enforcement officer, JANE DOE-2, a law enforcement officer, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and PETER ANDREYEV,

Plaintiffs,

v.

YARDI SYSTEMS, INC., RICHARD ROES 1-10, fictitious names of unknown individuals and ABC COMPANIES 1-10, fictitious names of unknown entities,

Defendants.

Civil Case No.: 1:24-cv-04103-HB

**DEFENDANT YARDI SYSTEMS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .......................................................................1

BACKGROUND .......................................................................................3

A. Procedural History..........................................................................3

B. Plaintiffs' Request to Amend the Complaint .............................................5

LEGAL STANDARD.................................................................................7

ARGUMENT ..........................................................................................8

I. PLAINTIFFS' PROPOSED SUPPLEMENT WOULD UNDULY PREJUDICE YARDI.........................................................................8

II. PLAINTIFFS' UNDUE DELAY FURTHER COMPOUNDS THE PREJUDICE..........................................................................14

CONCLUSION......................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albanian Assoc. Fund v. Twp. of Wayne*,
2007 WL 4232966 (D.N.J. Nov. 29, 2007) ....8, 11

*Atlas Data Privacy Corp. v. True Software Scandinavia AB*,
No. 25-7650 (D.N.J. Aug. 26, 2026) ....15

*Atlas Data Privacy Corp. v. We Inform, LLC*,
No. 25-1555 (3d Cir. 2025) ....4, 12

*Atlas Data Privacy Corp. v. We Inform, LLC*,
No. A-8-25 (N.J. Aug. 12, 2026) ....4, 11

*Cureton v. Nat'l Collegiate Athletic Ass'n*,
252 F.3d 267 (3d Cir. 2001) ....8, 10, 14, 15, 16

*Estate of Oliva ex rel. McHugh v. New Jersey*,
604 F.3d 788 (3d Cir. 2010) ....15, 16

*Estate of Wiley v. City of Newark*,
2022 WL 3013075 (D.N.J. July 29, 2022) ....16

*In re Estate of Stockdale*,
953 A.2d 454 (N.J. 2008) ....12

*Fancaster, Inc. v. Comcast Corp.*,
2010 WL 4320422 (D.N.J. Oct. 26, 2010) ....7

*Garrett v. Wexford Health*,
938 F.3d 69 (3d Cir. 2019) ....7

*Glenside West Corp. v. Exxon Co., U.S.A.*,
761 F. Supp. 1118 (D.N.J. 1991) ....7

*Hassoun v. Cimmino*,
126 F. Supp. 2d 353 (D.N.J. 2000) ....7, 8

*Love v. N.J. Dep't of Corr.*,
2015 WL 2226015 (D.N.J. May 12, 2015) ........ 8, 11, 13

*Michel v. NYP Holdings, Inc.*,
816 F.3d 686 (11th Cir. 2016) ........ 10

*MSP Recovery Claims, Series LLC v. Celgene Corp.*,
2024 WL 1327990 (D.N.J. Mar. 28, 2024) ........ 9

*Singh v. Twp. of Weehawken*,
2023 WL 2523640 (D.N.J. Mar. 15, 2023) ........ 8, 10

*Smart Pharmacy, Inc. v. Medco Health Sols., Inc.*,
2014 WL 3735344 (D.N.J. July 29, 2014) ........ 10

*United States v. Pechiney Plastic Packaging, Inc.*,
2013 WL 5436551 (D.N.J. Sept. 27, 2013) ........ 10

*Weyrich v. New Republic, Inc.*,
235 F.3d 617 (D.C. Cir. 2001) ........ 11

## **Statutes & Rules**

N.J.S.A. 2A:15-5.13(c) ........ 12

Daniel's Law, N.J.S.A. 56:8-166.1 ........ 2, 3, 4, 6, 10, 11, 15

Fed. R. Civ. P. 15 ........ 1, 6, 7, 14

## **Other Authorities**

6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1473 (3d
ed. 2019) ........ 7

## PRELIMINARY STATEMENT

Plaintiffs characterize their proposed amendment as a "narrow" update that adds "[n]o new claims, theories, or parties." It is neither narrow nor an update. More than two and a half years after filing suit, and weeks after written discovery was served, plaintiffs seek to add 5,518 assignors, an increase of approximately 28%. Each asserts a claim arising from a nondisclosure request submitted after the original Complaint was filed, and each rests on its own nondisclosure request(s), its own assignment, and its own question of whether and when Yardi complied. The proposed pleading also adds new allegations about Yardi's knowledge and intent.

Because these new claims rest on events that occurred after plaintiffs filed the original Complaint, Rule 15(d), not Rule 15(a), governs. Unlike Rule 15(a), which directs courts to "freely give leave" to amend, Rule 15(d) permits supplementation only "on just terms." Nothing about the supplement plaintiffs propose is just. The Court should deny the Motion.

*First*, the supplement would substantially prejudice Yardi. Plaintiffs insist that 5,518 additional assignors would impose "no additional discovery burden." But Yardi would have to investigate thousands of separate requests and assignments, including whether each assignor is a covered person, whether and when Yardi received each request, what information is at issue, and whether each assignment is valid, all while discovery is already underway. Further, Yardi's own offensive

discovery requests are scoped to the existing assignors—Yardi would need to start at the beginning and issue new discovery targeting thousands of additional assignors.

The supplement also does more than add assignors. It adds allegations that Yardi acted "knowingly and intentionally." ECF No. 106-6 ¶¶ 45–53. Those allegations arrive while the Third Circuit is deciding whether Daniel's Law may constitutionally impose liability without a mental state and, if not, whether any of its remedies can be severed. Plaintiffs are positioning themselves for what follows. But allegations about Yardi's state of mind would not change the outcome. If the statute is not upheld, the punitive-damages remedy falls with the actual-damages remedy on which it depends. All the allegations can do is set up a further round of litigation after the appeal and, in the interim, open discovery into Yardi's knowledge, intent, and data practices in a case whose resolution turns on a ruling that may make that discovery unnecessary. A supplement that raises new issues and would unduly delay resolution of the case should be denied.

*Second*, plaintiffs' delay is unexplained and was entirely within their control. Although a substantial portion of the additional assignments were confirmed in 2024, plaintiffs waited until October 2026—more than two years—to seek leave. They offer no reason for that delay. Instead, plaintiffs waited until discovery was underway to seek a substantial expansion of the case, imposing additional burdens on Yardi that could have been avoided had plaintiffs acted promptly.

Denial leaves plaintiffs with recourse: they remain free to pursue the additional assignors' claims in a separate action, which can be coordinated with this one and sequenced as the Court sees fit. Yardi does not suggest that defending those claims would be costless. The problem is forcing those new claims, and new allegations about Yardi's knowledge and intent, into a case that is already in discovery and awaiting a ruling that may determine their scope. Moreover, there is no apparent stopping point: as plaintiffs continue to obtain new assignments, they could seek to add still more claims, repeatedly expanding the scope of this litigation and disrupting discovery. Plaintiffs should not be permitted to bootstrap thousands of new claims onto an action that has been pending for years, while at the same time expanding the scope of the existing claims. The Motion should be denied.

## BACKGROUND

### A. Procedural History

Plaintiffs filed this action in the Superior Court of New Jersey on February 8, 2024, alleging that Yardi violated Daniel's Law by failing to cease disclosure of certain covered persons' information following receipt of nondisclosure requests. ECF No. 1-1 at 29–53 ("Compl."). The Complaint alleged that Atlas sued as assignee of "approximately 19,373 individuals," each of whom allegedly submitted a nondisclosure request through AtlasMail "[s]tarting on or about December 26,

2023." Compl. ¶¶ 25, 50. Yardi removed the action to this Court on March 22, 2024. ECF No. 1.

On November 26, 2024, the Court denied defendants' facial constitutional challenge to Daniel's Law, concluding that the statute served New Jersey's substantial interest in protecting covered persons' privacy and interpreting the statute to require negligence for actual-damages liability. ECF Nos. 38–39. The Court certified its ruling for interlocutory appeal, which the Third Circuit permitted in March 2025. ECF Nos. 40, 50. The Court subsequently denied Yardi's motion to dismiss under Rule 12(b)(6), and Yardi answered on October 3, 2025. ECF Nos. 65–66, 71.

On September 2, 2025, the Third Circuit certified to the New Jersey Supreme Court questions concerning the mental state required for civil liability under Daniel's Law. *Atlas Data Privacy Corp. v. We Inform, LLC*, No. 25-1555, ECF No. 104 (3d Cir. Sept. 2, 2025). On August 12, 2026, the New Jersey Supreme Court clarified that Daniel's Law imposes strict liability for actual damages without requiring proof of a culpable mental state. *Atlas Data Privacy Corp. v. We Inform, LLC*, No. A-8-25, slip op. at 27–29, 41 (N.J. Aug. 12, 2026). The parties subsequently submitted supplemental briefs to the Third Circuit addressing the New Jersey Supreme Court's decision, and the appeal remains pending.

Fact discovery is now underway. Pursuant to the Court's September 9, 2026 Order, the parties served written discovery on September 24, 2026, and responses on November 3, 2026. ECF No. 103.

**B. Plaintiffs' Request to Amend the Complaint**

On September 22, 2026, plaintiffs sought Yardi's consent to "file an amended complaint that includes additional assignees who ***sent nondisclosure requests to Defendants after the filing of the Complaint***." Staltari Decl. Ex. 1 at 9 (emphasis added). After several requests from Yardi to identify the additional assignors and the nondisclosure requests underlying their claims, plaintiffs provided a spreadsheet on October 6, 2026, identifying the additional assignors, the dates of their purported requests, the protected information at issue, and the assignment confirmation dates. *Id.* at 1–5.

Plaintiffs represented that the spreadsheet identifies the 5,518 additional assignors and confirmed that "at least one of the Covered Persons whose claims were included in the complaint sent another nondisclosure request after the complaint was filed." Staltari Decl. Ex. 1 at 1, 4. The spreadsheet contains 14,118 entries associated with 5,519 individuals, with nondisclosure requests dated from December 27, 2023, through September 2, 2026. *Id.* ¶ 4. All but two entries, associated with a single individual, concern requests submitted after the original Complaint was filed. *Id.* Approximately 38% of the requests were submitted by the end of 2024, 43% by

June 2025, and 86% by the end of 2025. *Id.* The assignment confirmation dates range from February 9, 2024, through September 18, 2026, with approximately 38% of the entries reflecting assignments confirmed in 2024 and the remaining 62% in September 2026. *Id.* ¶ 5.

On October 16, 2026, plaintiffs moved for leave to amend under Rule 15(a). ECF No. 106. Plaintiffs characterize the proposed amendment as "narrow," asserting that it merely "updates the number of Covered Persons who have assigned their Daniel's Law claims to Atlas since the original Complaints were filed" and "conforms the jurisdictional, venue, and related allegations" following removal. ECF No. 106-3 at 1. They insist that "[n]o new claims, theories, or parties are added." *Id.*

The proposed First Amended Complaint, however, goes beyond these purportedly narrow changes. As shown in the redline comparing the proposed supplement against the original Complaint, Staltari Decl. Ex. 2, the supplement increases the number of Atlas's assignors from approximately 19,373 to 24,891—adding 5,518 assignors whose claims arise from new nondisclosure requests submitted after the original Complaint was filed, rather than merely from assignments obtained after filing. Compl. ¶ 25; ECF No. 106-6 ¶ 27; Staltari Decl. ¶¶ 4–5. The supplement also adds allegations concerning Yardi's knowledge, intent, and conduct, including that Yardi "knowingly and intentionally" disclosed protected

information and "purposefully collected" data. ECF No. 106-6 ¶¶ 45–53; Staltari Decl. Ex. 2.

## LEGAL STANDARD

Federal Rule of Civil Procedure 15(d), rather than Rule 15(a), governs pleadings seeking to assert claims based on events occurring after the original complaint was filed. *Garrett v. Wexford Health*, 938 F.3d 69, 82–83 (3d Cir. 2019). As the Third Circuit explained, Rule 15(a) permits amendment to assert matters that "were overlooked or were unknown at the time the party interposed the original complaint," whereas Rule 15(d) governs "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." *Id.* (quoting 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1473 (3d ed. 2019); Fed. R. Civ. P. 15(d)). Unlike Rule 15(a), which directs courts to "freely give leave," Rule 15(d) provides that a court "may, on just terms," permit supplementation. Fed. R. Civ. P. 15(a)(2), (d). As the District of New Jersey has recognized, "[a]lthough similar, the standards governing the two subsections of Rule 15 are not identical." *Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 360 (D.N.J. 2000).

Motions to supplement a pleading under Rule 15(d) "are left to the sound discretion of the Court." *Fancaster, Inc. v. Comcast Corp.*, 2010 WL 4320422, at *3 (D.N.J. Oct. 26, 2010) (quoting *Glenside West Corp. v. Exxon Co., U.S.A.*, 761 F. Supp. 1118, 1133 (D.N.J. 1991)). Leave to supplement may be denied based on

"undue delay, bad faith, dilatory tactics, undue prejudice to defendants, or futility." *Hassoun*, 126 F. Supp. 2d at 361. A court may also deny supplementation "when it would raise new issues and unduly delay resolution of the case." *Love v. N.J. Dep't of Corr.*, 2015 WL 2226015, at *7 (D.N.J. May 12, 2015) (quoting *Albanian Assoc. Fund v. Twp. of Wayne*, 2007 WL 4232966, at *1 (D.N.J. Nov. 29, 2007)).

## ARGUMENT

### I. PLAINTIFFS' PROPOSED SUPPLEMENT WOULD UNDULY PREJUDICE YARDI

Leave to supplement may be denied where it would impose undue prejudice on the opposing party. *See Hassoun*, 126 F. Supp. 2d at 361. The inquiry focuses on "the hardship to the defendants if the amendment were permitted," including "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001); *see also Singh v. Twp. of Weehawken*, 2023 WL 2523640, at *3–4 (D.N.J. Mar. 15, 2023) (applying *Cureton* to deny supplementation). The supplement here would do both.

#### A. Adding 5,518 Assignors Would Require Thousands Of New, Claim-Specific Investigations

Plaintiffs argue the supplement would impose "no additional discovery burden beyond that inherent in the claims already pleaded." ECF No. 106-3 at 7. But that assumes the additional claims are more of the same. They are not. Each of the 5,518 assignors asserts a claim that arose after the original Complaint was filed,

and each depends on its own facts. Yardi would have to determine—in a case that is already well underway—whether the assignor was a covered person when the request was made, whether and when Yardi received the request, what information was at issue, whether that information was disclosed or available after the ten-business-day deadline, and whether Atlas holds a valid assignment. The burden of adding 5,518 assignors is thus akin to adding thousands of new plaintiffs to this action. *See MSP Recovery Claims, Series LLC v. Celgene Corp.*, 2024 WL 1327990, at *3 (D.N.J. Mar. 28, 2024) ("It is well settled that the assignee of a claim bears the same discovery production obligations as if the assignor had initiated the litigation itself.").

Plaintiffs' own spreadsheet shows the scale. It lists 14,118 nondisclosure requests associated with 5,519 individuals, dated from December 2023 through September 2, 2026. Staltari Decl. ¶¶ 4–5. Evaluating those requests means reconstructing Yardi's handling of each over nearly three years.

The timing makes the burden worse. Written discovery was served on September 24, with responses served on November 3—permitting these new claims would thus require Yardi to repeat this process and re-do its investigation and discovery for thousands of new claimants. Yardi's offensive discovery is also scoped to the existing assignors, and the supplement would require Yardi to serve new discovery directed at thousands of additional assignors.

That the claims arise under the same statute does not eliminate the additional discovery, cost, and preparation required to defend against them. Courts recognize that prejudice arises where an amendment would "require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial." *United States v. Pechiney Plastic Packaging, Inc.*, 2013 WL 5436551, at *6 (D.N.J. Sept. 27, 2013); *see also Cureton*, 252 F.3d at 275–76 (affirming denial of leave where amendment would require "burdensome new discovery and significant new trial preparation"); *Smart Pharmacy, Inc. v. Medco Health Sols., Inc.*, 2014 WL 3735344, at *4 (D.N.J. July 29, 2014) (denying leave where the proposed amendment would expand discovery and require additional preparation); *Singh*, 2023 WL 2523640, at *4 (denying supplementation where new allegations concerned distinct events requiring significant additional discovery).

Adding 5,518 assignors would therefore not merely enlarge this case; it would force Yardi to repeat its investigation and re-serve its discovery for thousands of new claimants after discovery has begun, which is precisely the "additional discovery, cost, and preparation" that *Cureton* treats as prejudice. That prejudice is particularly significant while Yardi's constitutional challenge to Daniel's Law remains pending before the Third Circuit. *See Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) ("[T]here is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation.");

*Weyrich v. New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001) ("[T]rial courts are understandably wary of allowing unnecessary discovery where First Amendment values might be threatened").

### B. The Supplement Would Raise New Issues That Would Delay Resolution Of The Case

Even apart from the burden of 5,518 additional claims, leave to supplement may be denied where it "would raise new issues and unduly delay resolution of the case." *Love*, 2015 WL 2226015, at *7 (quoting *Albanian Assoc. Fund, 2007 WL 4232966, at *1*). That is the case here.

The supplement injects new issues that have nothing to do with the additional assignors. The original Complaint did not allege that Yardi acted knowingly or intentionally. The supplement now does. ECF No. 106-6 ¶¶ 45–53. Plaintiffs call the new allegations "conform[ing]" changes, ECF No. 106-3 at 1, yet they are incorporated into plaintiffs' substantive claim. ECF No. 106-6 ¶ 68.

The reason for adding them appears to be the pending appeal. The Third Circuit is deciding whether Daniel's Law may constitutionally impose liability without a mental state and, if it may not, whether any part of the statute can be severed and saved. The New Jersey Supreme Court has held that the statute "does not contain a mental state requirement for actual damages liability." *Atlas Data Privacy Corp. v. We Inform, LLC*, No. A-8-25, slip op. at 7 (N.J. Aug. 12, 2026). The Third Circuit has observed that, beyond the punitive-damages provision, "the

statute does not appear to require any mens rea for other forms of relief." *Atlas Data Privacy Corp. v. We Inform, LLC*, No. 25-1555, ECF No. 103 at 6 (3d Cir. Sept. 2, 2025). And the Attorney General has urged the Third Circuit to preserve the "punitive-damages provision" if the actual-damages provision falls. *Id.*, ECF No. 62 at 49–50 (3d Cir. May 12, 2025). Plaintiffs are positioning themselves for what comes after the appeal: they are attempting to insert issues of knowledge and intent now, so that they can invoke them if the Third Circuit invalidates liability without fault.

Those allegations would not change the outcome and should not be added to this case. The question before the Third Circuit is whether the statute, as the New Jersey Supreme Court has construed it, is constitutional. Plaintiffs' allegations about Yardi's state of mind cannot change that. If the statute is not upheld, the punitive-damages remedy falls with the actual-damages remedy, because under New Jersey law a compensatory award is a predicate for punitive damages. N.J.S.A. 2A:15-5.13(c); *In re Estate of Stockdale*, 953 A.2d 454, 473–74 (N.J. 2008). Allegations that Yardi acted knowingly will not alter that result.

The only function of these allegations is to set up a further round of litigation after the appeal over whether such allegations can salvage claims that the statute, as

construed, would not otherwise support.[1] The Court need not decide now whether any such theory has merit. It is enough that the supplement would raise those new issues and delay resolution of the case while they are litigated, and that in the interim it would open discovery into Yardi's knowledge, intent, and data practices in a case whose resolution turns on a ruling that may make that discovery unnecessary. *See Love*, 2015 WL 2226015, at *7.

### C. The Prejudice Is Compounded Because The Claims Have No End Point

Plaintiffs' own motion shows that the pool of potential claims is still growing. They seek to add the assignors who have assigned their claims "since the original Complaints were filed," and the spreadsheet runs through September 2026. ECF No. 106-3 at 1; Staltari Decl. ¶¶ 4–5. If the Court permits this supplement, nothing prevents another in six months. Yardi cannot defend a case in which the universe of claims keeps changing, and discovery cannot be organized around claims that have not yet been pleaded.

---

[1] Plaintiffs may argue their prayer for punitive damages always put Yardi's state of mind at issue. It did not put at issue whether Yardi acted knowingly or intentionally. The Court sustained the original Complaint by inferring negligence and recklessness from the allegation that information remained available after the statutory deadline. ECF No. 65 at 21–22, 25. It did not find, and the Complaint did not allege, that Yardi knew of or intended any violation. Nor do plaintiffs need such allegations to seek punitive damages. If the new allegations are the conforming changes plaintiffs describe, they add nothing and there is no reason to include them. If they are material, they raise new issues and invite delay that, for the reasons above, cannot change the outcome.

### D. Denial Preserves An Orderly Path For The Additional Claims

Yardi does not contend that the additional claims would be costless to defend in a separate action. The prejudice lies elsewhere: it lies in forcing thousands of new claims, and new allegations about Yardi's knowledge and intent, into a case that is already in discovery, in the middle of an appeal that may determine the scope of those claims. Yardi would have to re-serve its offensive discovery, answer a new pleading, and litigate 24,891 claims on a single compressed track instead of 19,373 on the existing one, and it would have to do so without knowing when the universe of claims will stop growing.

Denial avoids that disruption without harming plaintiffs. They remain free to pursue the additional assignors' claims in a separate action, which can be coordinated with this one and sequenced as the Court sees fit. That is what Rule 15(d) contemplates in permitting supplementation only "on just terms." What the Court should not permit is bootstrapping thousands of new claims into an action that has been pending for years while enlarging the existing ones.

## II. PLAINTIFFS' UNDUE DELAY FURTHER COMPOUNDS THE PREJUDICE

The Court should also deny plaintiffs' Motion because plaintiffs unduly delayed seeking leave to supplement. In assessing undue delay, courts focus on the movant's "reasons for not amending sooner." *Cureton*, 252 F.3d at 273. Although

delay alone ordinarily does not warrant denial of leave, it becomes undue when it imposes an unwarranted burden on the Court or prejudices the opposing party. *Id.*

This Court recently applied those principles in another Daniel's Law action brought by Atlas, explaining that "[d]elay becomes undue when it places an unwarranted burden on the court." *Atlas Data Privacy Corp. v. True Software Scandinavia AB*, No. 25-7650, ECF No. 54 at 8–9 (D.N.J. Aug. 26, 2026) (quoting *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 803 (3d Cir. 2010)). There, the Court denied Atlas leave to amend, finding undue delay where Atlas had known the relevant facts months before seeking amendment. *Id.* at 9.

The same concern arises here. Plaintiffs waited until October 16, 2026—more than two and a half years after commencing this action—to seek leave to add 5,518 assignors. ECF No. 106. Yet plaintiffs' own spreadsheet reflects that approximately 38% of the entries concern nondisclosure requests submitted after the original Complaint was filed and assignments confirmed in 2024, more than two years before plaintiffs sought leave to supplement. Staltari Decl. ¶¶ 4–5. Plaintiffs offer no explanation for why they waited until October 2026 to assert these claims.

Instead, plaintiffs argue only that the additional assignments "accrued after the original Complaints were filed" and therefore "could not have [been] pleaded . . . at the time." ECF No. 106-3 at 5. But that explains only why the claims were not included in the original Complaint filed in February 2024, not why plaintiffs waited

until October 2026 to assert claims based on requests submitted and assignments confirmed in 2024.

Atlas operates the platform through which the nondisclosure requests were submitted and obtained the assignments underlying the proposed claims. ECF No. 106-6 ¶¶ 32–36. Plaintiffs thus possessed the information necessary to seek supplementation long before filing their Motion. Nor does the absence of a court-imposed amendment deadline excuse their delay. ECF No. 106-3 at 5. The relevant inquiry is why plaintiffs failed to seek leave sooner despite having the information underlying their proposed claims. *Cureton*, 252 F.3d at 273; *Estate of Oliva, 604 F.3d at 803* (affirming denial of leave to add a new claim where the claim "should have been apparent" earlier); *Est. of Wiley v. City of Newark*, 2022 WL 3013075, at *4 (D.N.J. July 29, 2022) (finding undue delay where the plaintiff was "in possession" of "the facts underlying the proposed claims . . . more than one and a half years ago").

Plaintiffs' delay further compounds the prejudice to Yardi. Plaintiffs waited until after written discovery was served on September 24, 2026, and less than three weeks before responses were due on November 3, 2026, to seek leave. ECF No. 106-1 ¶ 7. Adding thousands of new claims and factual allegations at this stage would require Yardi to reassess its discovery needs and defense strategy. Had plaintiffs sought supplementation when the earlier assignments were obtained, the parties could have accounted for those claims from the outset of discovery. Plaintiffs'

unexplained delay instead threatens to disrupt ongoing discovery and impose unnecessary burdens on Yardi, further warranting denial of leave.[2]

## CONCLUSION

For the foregoing reasons, Yardi respectfully requests that the Court deny plaintiffs' Motion for Leave to File Amended Complaint.

[2] Yardi does not concede the sufficiency or timeliness of any additional claim. It reserves all defenses to them, and those specific to each assignor, such as receipt of the request, covered-person status, and the validity of the assignment.

Dated: New York, New York
November 23, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN LLP

*s/ Anthony J. Staltari*
Anthony J. Staltari (ID No. 233022017)
295 5th Avenue, 9th Floor
New York, NY 10016
Telephone: (212) 849-7221
anthonystaltari@quinnemanuel.com

Viola Trebicka (admitted *pro hac vice*)
John Wall Baumann (admitted *pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
violatrebicka@quinnemanuel.com
jackbaumann@quinnemanuel.com

Ella Hallwass (admitted *pro hac vice*)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Telephone: (650) 801-5000
ellahallwass@quinnemanuel.com

Xi ("Tracy") Gao (admitted *pro hac vice*)
555 13th Street NW, Suite 600
Washington D.C., 20004
Telephone: (202) 538-8000
tracygao@quinnemanuel.com

*Attorneys for Defendant Yardi*

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to 28 U.S.C. § 1746, that on this date I filed the foregoing document with the CM/ECF system for U.S. District Court for the District of New Jersey, thereby effectuating service upon all counsel of record by electronic means.

I certify under the penalty of perjury that the foregoing is true and correct. Executed in New York, New York on this 23rd day of November, 2026.

By: /s/ *Anthony J. Staltari*
Anthony J. Staltari (ID No. 233022017)